# Staunton.

## Cornett v. Rhudy.

### September 24th, 1885.

1. Presumptions—*Hereditaments.*—In principle there is no difference as to the acquisition of rights, whether the subject be corporeal or incorporeal; but the statute of limitations introduces a difference.

2. Idem—*Corporeal hereditaments—Statute of limitations.*—As to the possession requisite to acquire title to things corporeal, the statutory period prevails.

3. Idem—*Incorporeal hereditaments—Prescription.*—Twenty years adverse, exclusive, undisturbed possession of things incorporeal, affords conclusive presumption of title.

   One is entitled to the benefit of all water on his lands, but another may acquire a right thereto by twenty years adverse, exclusive and undisturbed occupation thereof.

4. Practice at common law—*Province of jury.*—It is fundamental that, where the evidence is parol, any opinion given by the court as to the weight, effect or sufficiency of the evidence submitted to the jury, or any assumption of a fact as proved, is an invasion of the province of the jury, and is reversible error.

Error to judgment of circuit court of Grayson county, rendered on the —— day of September, 1883, in an action of trespass on the case, wherein the appellant Cornett was plaintiff, and the appellee Rhudy and als. were defendants.

This case was argued at Wytheville, but decided at Staunton. The case is fully stated in the opinion of Judge Lacy.

*Robert Crockett,* for plaintiff in error.

*W. H. Bolling, W. R. Terry* and *Dickenson,* for defendants.

LACY, J., delivered the opinion of the court.

The plaintiff in error instituted his action of trespass on the case for damages to his lands, caused by the mill-dam of the defendants in error backing the water, and flooding the lands of the plaintiff in error. The declaration sets forth that the defendants in error, on the first day of January, 1879, raised their dam, and flooded the lands of the said plaintiff in error, and on other days, from that time to the institution of the suit, on the 25th day of February, 1879, had caused damage to the plaintiff, &c.

The defendants filed three pleas, not guilty. Not guilty in five years, and that the plaintiff was not the owner of the fee in the land upon which he charged the damages to have been committed; to which the plaintiff objected, which objection was overruled by the court. Subsequently three other pleas were filed without objection. One setting up a right to flood the lands of the plaintiff by prescription. The fifth is of a prescriptive right for ten years; and the sixth is of a title by ancient deed. The plaintiff replied generally to these pleas. At the trial the plaintiff asked for four instructions. The court gave three, and refused the third instruction asked for by the plaintiff. The defendants asked for five instructions, all of which the court gave. And the plaintiff excepted to the ruling of the court rejecting his third instruction and giving the five instructions asked for by the defendants; and his bill of exceptions, setting forth the evidence and the instructions objected to, was duly signed and recorded.

The third instruction of the plaintiff, rejected by the court, is as follows:

" "The jury are also instructed, that ten years, the period by the statute limiting the time when any person shall make an entry on or bring an action to recover any land lying west

of the Alleghany mountains, where the same in question is situated, does not apply to this action."

The fourth and fifth instructions given by the court, upon the motion of the defendants, are in effect the converse of the third instruction asked for by the plaintiff and refused by the court, to which is added, in the fourth instruction, that in the assessment of damages they are limited in their enquiry to the period set forth in the plaintiff's declaration, as stated above.

The first question upon which we are called to pass, is the question raised by the rejection of the plaintiff's third instruction, and giving to the jury instructions embodying the converse of the proposition therein contained, numbered four and five of the defendant's instructions. That is, that the presumption of the grant of an easement, giving the right to pen back water upon the lands of another, may arise, and the right may be acquired, by user and enjoyment adverse and exclusive in its nature, of the said easement, for the same period of time which would under the statute of limitations raise such presumption as to, and acquire title by possession, to real estate, held during the time and in the manner fixed by law.

The uninterrupted enjoyment of an incorporeal hereditament, for a period beyond the memory of man, is held to furnish a conclusive presumption of a prior grant of that which has been so enjoyed. If this enjoyment has been not only uninterrupted, but exclusive and adverse in its character for the period of *twenty years*, this has been held at common law as a conclusive presumption of title.

There is no difference *in principle* whether the subject be a corporeal or an incorporeal hereditament: a grant of land may be as well presumed as the grant of a fishery, or a common, or a way.

But, in regard to the effect of possession alone for a period of time, unaccompanied by other evidence, as affording presumption of title, *a difference* is introduced *by reason* of the *statute of limitations*, between *corporeal subjects*, such as lands and tene-

ments, and *things incorporeal;* and it has been held, that a grant
of lands, conferring an entire title, cannot be presumed from
mere possession alone for any length of time short of that pre-
scribed by the statute of limitations.    The reason is, that, with
regard to *corporeal hereditaments,* the statute has made all the
provisions which the law deems necessary for quieting posses-
sions, and has thereby *taken these cases out of the operation of the
common law.*    Greenleaf 'Ev. v. 1.    Judge Lomax says, upon
this subject: "There is besides, a species of common law pre-
scription, which affects incorporeal rights, profits and ease-
ments, such as commons, ways, water courses, viz: *twenty years*
undisturbed enjoyment, which is considered as affording at
least *prima facie* evidence of a prescription, or customary right.
So of the use of a water course, or of the use of ancient lights;
these may be inferred from *twenty years* exercise of such rights."
2 Lom. Dig. 786.

And while the same high authority asserts, that in Virginia
there can be no right claimed by immemorial prescription, ac-
cording to the doctrines of the English law, still, as we have
seen, he recognizes and defines the common law prescription of
*twenty years as affecting incorporeal rights.*

Judge Tucker says, in his Commentaries, "The 17th chapter
of Mr. Blackstone's 2nd book being devoted to title by pre-
scription, I shall content myself with merely referring the stu-
dent to it for his perusal.    For we must remember, as every
prescription is *founded solely* on immemorial enjoyment, and as
the comparatively recent settlement of the American colonies
excludes the idea of such immemorial use, we can have no
right by prescription in Virginia: a position in which there
seems to be an universal acquiescence among the profession
with us."    Book 2, 211, T. C.

Mr. Minor, referring to this idea, and citing Littleton and
Coke, says the authorities irresistibly show that *there may be a
title by prescription in Virginia,* where the possession has been

honest, uninterrupted, adverse and immemorial; and they show, moreover, that a continuance of possession *for more than twenty years*, if the other circumstances exist, is conclusive proof of immemorial enjoyment. Minor's Inst. p. 494, B. 2.

In the case of *Coalter* v. *Hunter*, 4 Rand. 58, Judge Cabell, delivering the opinion of this court, cited Lord Ellenborough as saying, in *Beaty* v. *Shaw*, 6 East. 208, that, "*twenty years* exclusive enjoyment of water in any particular manner, affords a conclusive presumption of right in the party so enjoying it, derived either from grant or act of parliament;" and says that this doctrine, understood as Lord Ellenborough intended to apply it, is perfectly correct; and that the law on subjects of this kind, is well laid down in *Campbell* v. *Willcox*, 3 East. 294, where it was held, "that if the jury were satisfied that the *enjoyment of the way was adverse*, and that it had continued *upwards of twenty years*, it was sufficient ground for presuming a grant." 4 Rand. 66. See, also, opinion of Carr, J., in *Stokes & Smith* v. *The Upper Appomattox Company*, 3 Leigh, 361.

In Goddard on Easement it is said: "In like manner a right may be acquired to obstruct the water of a stream from flowing in its usual course, and pen it back on the land of riparian proprietors, if the practice of obstructing and penning it back has continued for *twenty years*, uninterruptedly, and if the servient owner has been prejudiced thereby." Goddard on Easement, 249, citing numerous American cases: *Sherwood* v. *Burr*, 4 Day, 244; *Williams* v. *Nelson*, 2 Peck, 141; *Baldwin* v. *Calkins*, 10 Wend. 169; *Vliet* v. *Sherwood*, 35 Wis.

In the case of *Sherwood* v. *Burr*, *supra*, this period was stated to be in analogy to the statute of limitations, but no period short of that required by such statute to gain a title to land, will be sufficient for this purpose.

In the case of *Ricard* v. *Williams*, 7 Wheaton, 110, Mr. Justice Story, in delivering the opinion of the supreme court of the United States, says: "In general it is the policy of courts

of law to limit the presumption of grants to periods analagous to those of the statute of limitations, in cases where the statute does not apply."

In the case of *Scott* v. *Beutel*, 23 Gratt. 1, this question was before this court, and it was claimed by the appellants, that the culvert being an easement in existence for more than fifteen years before the sale, stands under the laws of Virginia on the same footing as an easement which had been used for twenty years, stands at common law. The court did not decide the question, saying, that as to the proposition, which seems to be a claim by the heirs of McKildoe by prescription, it is sufficient to remark, that the whole property, both the lot on which the culvert stands, and the lot for which the use is claimed, were under the same ownership, and that there could be no servitude in favor of one upon the other.  23 Gratt. 516.

The general rule of law as applied to this subject is, that independent of any particular enjoyment used to be had by another, every man has a right to have the advantage of a flood of water in his own lands, without diminution or alteration.   But an adverse right may exist, founded on the occupation of another; and though the stream be either diminished in quantity, or corrupted in quality, as by the exercise of certain trades; yet if the occupation of the party so taking or using it shall have existed for so long a time as may raise the presumption of a grant, the other party, whose land is below, must take the stream subject to such adverse right.   And twenty years exclusive enjoyment of water in any particular manner, adverse and injurious in its nature, affords a conclusive presumption of right in the party so enjoying it, derived from grant.   But no such presumption of a grant will arise from an adverse use and possession for any shorter period: the statute of limitations as to entry, or, as for bringing an action for land, does not apply to this adverse user of an incorporeal hereditament.   And the action of the circuit court instructing the jury that an adverse

possession for ten years would raise this presumption, is erroneous, and for that reason the judgment will be reversed.

It is not necessary to notice other errors growing out of the instructions given, as the foregoing disposes of the case here. But in view of the language used in the third instruction of the defendants, given by the court, that "they (the jury) are warranted in presuming such authority in the circumstances of this case, and *from the great length of time since the dam was erected,*" &c., it may not be altogether useless to remark that this court has said, in *McDowell* v. *Crawford,* 11 Gratt. on page 402, that "it is a fundamental maxim that the court responds to questions of law, and the jury to questions of fact; the court must decide on the admissibility of evidence, that being a question of law: but not as to its weight after it is admitted, that being a question of fact." Citing, with approval, Mr. Conway Robinson (1 Rob. Prac. 338) as saying, the decided causes "evince a jealous care to watch over and protect the legitimate powers of a jury. They show that the court must be very careful not to overstep the line which separates law from fact. They establish the doctrine, that when the evidence is *parol,* any opinion as to the *weight, effect,* or *sufficiency* of the evidence submitted to the jury, *any assumption of a fact as proved,* will be an invasion of the province of the jury." See, also, Mr. Barton's Law Practice, 214, citing *Barring* v. *Reeder,* 1 H. & M. 174; *Moore* v. *Chapman,* 3 H. & M. 266; *Fisher's ex.* v. *Duncan & Turnbull,* 1 H. & M. 366; *Whiteacre* v. *McIhaney,* 4 Munf. 310; *McCrae* v. *Scott & Saunders,* 4 Rand. 463. Mr. Barton observes, from these authorities, that "For making observations or instructions to the jury as to the weight to be given by them to any particular part of the testimony, or to the whole evidence, the cause may be reversed and a new trial awarded." See, also, *Davis* v. *Miller,* 14 Gratt. 1; *Hopkins* v. *Richardson,* 2 Gratt. 486.

The *great length of time,* or *what length of time had elapsed since the dam was erected,* was a question of fact for the jury to determine from the evidence adduced in the case.

The judgment was as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid, is of opinion, for reasons stated in writing and filed with the record, that the circuit court of Grayson erred in refusing to give the plaintiff's third instruction, and in giving the fourth and fifth instructions asked for by the defendant. It is therefore considered by the court that the said judgment be reversed and annulled, and the case be remanded to the said circuit court of Grayson, for a new trial to be had therein, in accordance with the foregoing opinion of this court and the views herein; and it is further considered, that the plaintiff in error recover against the defendant in error his costs by him expended in the prosecution of his writ of error aforesaid in this court. Which is ordered to be certified, with the foregoing opinion, to the said circuit court of Grayson.

JUDGMENT REVERSED.